1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                    )
THE SEATTLE AFFILIATE OF THE          )      No. C04-0860L
OCTOBER 22ND COALITION TO STOP   )
POLICE BRUTALITY, REPRESSION      )
AND THE CRIMINALIZATION OF A       )
GENERATION,                                       )
                                                    )      ORDER REGARDING CROSS-
                        Plaintiff,                      )      MOTIONS FOR SUMMARY
            v.                                           )      JUDGMENT
                                                    )
CITY OF SEATTLE, *et al.*,                     )
                                                    )
                        Defendants.                 )
_____)

        This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment" (Dkt. # 17) and "Defendants' Motion for Summary Judgment on the Merits" (Dkt. # 20). Plaintiff seeks a summary determination that Seattle Municipal Code Chapter 11.25 (hereinafter "the Parade Ordinance") is unconstitutional on its face under the First Amendment of the United States Constitution and Article 1, section 5 of the Washington State Constitution insofar as it grants City law enforcement officers unbridled discretion to restrain speech. Defendants have filed a cross-motion for summary judgment on the constitutionality of the

ORDER REGARDING CROSS -MOTIONS
FOR SUMMARY JUDGMENT

Parade Ordinance, both on its face and as applied, and also seek dismissal of certain claims as duplicative, barred by the doctrine of qualified immunity, and/or unsupported by the facts.[1]

Summary judgment is appropriate where admissible evidence, read in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact that would preclude entry of judgment in favor of the moving party. Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003). The parties agree that the relevant facts of this case are not in dispute. Marches and parades in the City of Seattle are governed by the Parade Ordinance, SMC § 11.25.020, which states in pertinent part:

> No person shall conduct or participate in a parade upon any street or alley in the City without first submitting a written notification to the Chief of Police and obtaining a permit from the Chief of Police to do so. Upon written notification to the Chief of Police, the Chief of Police shall grant a permit. So that preparations for traffic regulation can be made, the written notification for permit shall state the place and hour of formation, the proposed line of movement or march, the scheduled starting time, and the names of the persons having charge or control of the parade, and the name of the sponsoring agency, if any. . . . The Chief of Police may modify the place and hour of formation, the proposed line of movement or march, and the scheduled starting time in the interest of vehicular or pedestrian traffic safety.

Plaintiff filed the necessary written notification and was granted a permit to march through the City streets on October 22, 2003. The permit did not specify a minimum number of participants although the parade organizer, Daniel DiLeva, had stated in the permit application that between 100 and 400 people would take part.

On October 22, 2003, approximately 75-100 individuals gathered for the parade. The march was scheduled to occur during rush hour and, as the participants were organizing themselves, it was rainy and getting dark. After discussing the matter with defendant Paulsen, the commander of the motorcycle unit, defendant Sano advised the marchers that their permit

---

[1] "Defendants' Motion for Leave to File Supplemental Brief Regarding Plaintiff's Submission of Supplemental Authority" (Dkt. # 49) is DENIED.

ORDER REGARDING CROSS -MOTIONS
FOR SUMMARY JUDGMENT             -2-

was "rescinded" because they did not have enough people to march in the street. The participants were directed to march on the sidewalk and a police escort was provided to assist them across intersections.[2]

**I. Facial Challenge Under the First Amendment**

The Parade Ordinance is a prior restraint on speech under federal law because it requires a permit before authorizing speech in one of the most public of places, our streets. Forsyth County v. The Nationalist Movement, 505 U.S. 123, 130 (1992). Streets have "immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." Shuttlesworth v. City of Birmingham, 394 U.S. 147, 152 (1969). A citizen's right to use public streets and parks is not absolute, however.

> Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. . . . As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.

Cox v. New Hampshire, 312 U.S. 569, 574 (1941).

---

[2] Although plaintiff has presented evidence showing that the police did not close every intersection on the parade route, it is undisputed that the police escort did, at times, close intersections to prevent a conflict with the rush hour flow of vehicular traffic.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                    -3-

Should a municipality decide to impose a permit requirement on those wishing to march in its streets, such ordinances must meet certain First Amendment requirements: they must not be based on the content of the message, they must be narrowly tailored to serve a significant governmental interest, and they must leave ample alternatives for communication. In addition, the permit scheme "may not delegate overly broad licensing discretion to a government official." Forsyth County, 505 U.S. at 130. Plaintiff argues that the Parade Ordinance is unconstitutional because it does not provide adequate standards for the Chief of Police (or his delegates) to apply when determining whether to grant a permit or to impose conditions on the use of the streets.

On its face, SMC § 11.25.020 does not authorize the administrator to deny a permit. The Chief of Police is required to grant a permit upon receipt of an application that satisfies the requirements of the Parade Ordinance. As written, therefore, the ordinance confers no discretion, much less overly broad discretion, regarding the issuance of a permit. With regards to the terms and conditions, if any, imposed on a march, the ordinance contemplates instances in which the administrator will grant a permit that does not precisely match the applicant's request. The Parade Ordinance is fairly specific, however, regarding the nature of the changes that can be made and the reasons for which such alterations can be imposed. As set forth in the ordinance, "[t]he Chief of Police may modify the place and hour of formation, the proposed line of movement or march, and the scheduled starting time in the interest of vehicular or pedestrian traffic safety." SMC § 11.25.020.

Unlike the regulation evaluated by the Supreme Court in Shuttlesworth, nebulous and ill-defined concepts such as "public welfare," "decency," and "morals" are not the touchstone of the analysis under the Parade Ordinance. 394 U.S. at 150. Rather, the Chief of Police is to consider only two criteria, vehicular traffic safety and pedestrian traffic safety, when determining whether to modify a permit application. The Supreme Court's decision in Shuttlesworth suggests that criteria of this nature, which are clearly related to the proper

regulation of our streets and are within the special knowledge of law enforcement officers, are exactly the type of considerations that would pass constitutional muster. 394 U.S. at 153 (ordinance unconstitutional where the administrator was given "extensive authority to issue or refuse to issue parade permits on the basis of broad criteria entirely unrelated to legitimate municipal regulation of the public streets and sidewalks."). See also Niemotko v. Maryland, 340 U.S. 268, 282 (1951) (Frankfurter, J. concurring) ("A licensing standard which gives an official authority to censor the content of a speech differs *toto coelo* from one limited by its terms, or by nondiscriminatory practice, to considerations of public safety and the like."); New England Regional Council of Carpenters v. Kinton, 284 F.3d 9, 25-26 (1st Cir. 2002) (public safety is a legitimate consideration when issuing parade permits and, because such considerations fall within the competence of the constabulary, the decision makers will not be called upon to "make judgments on matters beyond their competence.").

        Such is the case here. The Chief of Police is required to make his permit decisions based on specific grounds about which law enforcement officers have special expertise. Considerations of vehicular and pedestrian traffic safety are within the administrator's competence, provide "narrowly drawn, reasonable and definite standards" to guide the administrator's determination, and are enforceable on review. See, e.g., Thomas v. Chicago Park Dist., 534 U.S. 316, 324 (2002) (ordinance authorizing rejection of permit based on concerns regarding "the health or safety of park users or Park District employees" does not leave the decision to the whim of the administrator, is narrowly drawn, and provides standard for review).

        The fact that two different officers reviewing the same permit application could issue permits with different restrictions or modifications (one, for example, could leave the time of the parade untouched but require a minimum number of participants while the other could require an earlier start time without imposing a certain number of marchers) does not make the ordinance unconstitutional. Requiring municipalities to draft parade ordinances that not only

ORDER REGARDING CROSS -MOTIONS
FOR SUMMARY JUDGMENT        -5-

specify the factors that should be considered when granting/modifying permit applications, but also state the specific outcome that must flow from each set of potential facts is unrealistic and requires "a degree of rigidity that is found in few legal arrangements." Thomas, 534 U.S. at 325. The First Amendment analysis does not require that all discretion be stripped from the reviewing official: the ordinance must simply guide the exercise of discretion and provide sufficient standards for a reviewing agency or court to ensure that censorship was not a motivating factor in the licensing decision. In the example provided above, the City could presumably argue that both officers made their modifications for the purpose of protecting the safety of the marchers and mitigating the risks imposed by vehicular traffic. In one instance, the start time of the march was altered to avoid rush hour congestion and, in the other, a minimum number of participants was required to ensure that the pedestrians were visible as daylight waned. On review, the City would bear the burden of showing that the challenged modification furthered vehicular and pedestrian traffic safety: the mere fact that different reviewing officers issued different permits would not be determinative and does not make the ordinance unconstitutional.

Plaintiff argues that the Parade Ordinance is unconstitutional on its face because the City has interpreted it to authorize denials/revocation of permits. Although the City's authoritative construction of the ordinance must be considered when evaluating plaintiff's facial challenge under the First Amendment (see Forsyth County, 505 U.S. at 131), plaintiff's reliance on the interpretation of individual field commanders is misplaced.[3] The doctrine forbidding unbridled discretion "requires that the limits the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." Nationalist Movement v. City of Boston, 12 F. Supp.2d 182, 194 (D.

---

[3] Despite Lieutenant Sano's repeated use of the words "revoke" and/or "rescind" when communicating with the marchers on October 22, 2003, his decision to force the marchers to utilize the sidewalks with a police escort was a modification of the line of movement, rather than a revocation. Pursuant to SMC § 11.14.410, a "parade" is defined as any event requiring the "closure of streets to prevent a conflict with the regular flow of vehicular traffic."

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -6-

Mass. 1998) (quoting City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 770 (1988)). Plaintiff itself argues that there were no authoritative interpretations of the Parade Ordinance: there were no amendments to the ordinance, no administrative regulations, no court decisions, and no inter-office memoranda interpreting the Parade Ordinance or explaining how it should be applied. The fact that Lieutenant Sano said or even believed that he had "revoked" plaintiff's permit for lack of participation does not create an authoritative construction of the ordinance, especially where neither the plain language of the ordinance nor municipal policy makers support such an interpretation.

Finally, plaintiff contends that the Parade Ordinance is constitutionally infirm because the City could apply the ordinance in bad faith to restrict speech on the basis of content. But the same could be said for other licensing considerations that have been upheld by the Supreme Court, such as the "health and safety" ground discussed in Thomas v. Chicago Park District, 534 U.S. 316. A permit scheme must "contain adequate standards to guide the official's decision and render it subject to effective judicial review." Thomas, 534 U.S. at 323 (citing Niemotko, 340 U.S. at 271). As discussed above, the First Amendment does not require that the ordinance dictate the precise outcome of every permit application. Some discretion is permissible as long as the ordinance has "narrowly drawn, reasonable and definite standards" guiding the hand of the administrator (Forsyth County, 505 U.S. at 132-33 (quoting Niemotko, 340 U.S. at 271)). All but the most ministerial of ordinances ultimately rely on the good faith and common sense of the administrator. If the Chief of Police were to apply the Parade Ordinance in bad faith by citing baseless concerns regarding "vehicular or pedestrian traffic safety" as a pretext for limiting the dissemination of certain messages, such abuses could be weeded out on review or through an as-applied challenge under the First Amendment.

**II. As-Applied Challenge Under the First Amendment**

Defendants argue that plaintiff has not produced any evidence that the decision to alter the terms and conditions of plaintiff's permit on October 22, 2003, was based on the

content of plaintiff's speech. Motion at 14. Defendant maintains that the decision was made as a result of content-neutral considerations, namely the number of marchers and the conditions that existed at the time of the scheduled march. There is, however, circumstantial evidence from which a reasonable juror could conclude that the on-the-spot decision to force the marchers onto the sidewalk was motivated by the content of their message.

In the first instance, the timing of defendants' decision is suspect. None of the conditions that defendants now say was the motivating factor behind the modification of plaintiff's permit should have come as a surprise to defendants. Plaintiff applied for a permit to march through the City streets on October 22, 2003, starting at 5:30 pm with between 100 and 400 participants. Although there was a substantial likelihood, based on the facts disclosed in the permit application, that as few as 100 marchers would face rain, impending darkness, and rush hour traffic when they showed up for the start of the parade, no conditions were placed on the permit to address these foreseeable conditions. If, as defendants now argue, considerations of vehicular and pedestrian traffic safety require that all small parades held under these conditions be conducted on the sidewalk, such limitations could have been, and should have been, imposed at the time the permit was granted. Instead, defendants waited until the marchers began to arrive with their posters and banners opposing police brutality to decide that it was simply too dangerous for a group of 75-100 people to march in the streets of Seattle.[4]

---

[4] Not all on-the-scene modifications of a parade permit would give rise to a genuine issue of fact regarding defendants' motivation. At oral argument, both parties agreed that modifications required by emergent or otherwise unforeseen circumstances would not, standing alone, support a finding of pretext or content-based discrimination. For example, if, on the day of the parade, a gas leak occurred somewhere near the planned route or an interstate pile-up required unimpeded access to area hospitals, the fact that the field commander modified the route or the starting time would not raise a fact issue regarding discriminatory intent. Where all of the relevant facts are known or foreseeable, however, modifications imposed as the marchers gather and the content of their message becomes clear will often trigger suspicion regarding the administrator's motives. See Chaker v. Grogan, 428 F.3d 1215, 1227 (9th Cir. 2005) ("Suspicion that viewpoint discrimination is afoot is at its zenith when the speech restricted is speech critical of the government . . ..") (internal quotation marks and citations omitted).

Secondly, defendants' justifications for the modification of plaintiff's permit have altered over time. On the day of the march, Lieutenant Sano's stated reason for placing the marchers on the sidewalk was the number of participants. After this litigation was initiated, defendants argued that the weather, lighting, and traffic conditions that prevailed at 5:30 pm on October 22, 2003, also justified the modification. These factors were not mentioned on the day of the event.

Thirdly, a review of defendants' permitting decisions over the last few years shows that applications for political and/or protest marches are more likely to garner a minimum participant requirement than are community or sports-related parades. Defendants explain that number requirements are often imposed when the ability of the sponsor to attract participants is in doubt (a concern that does not arise when Seafair applies for a permit), but there is a clear tendency to place restrictions on controversial speakers. That fact, along with the others described in this section, can be weighed by the factfinder when determining defendants' motives.

Finally, plaintiff has raised a genuine issue of fact regarding defendants' contention that allowing 75-100 people to march in the City streets at dusk during a rainy rush hour imposes an unacceptable risk to vehicular and pedestrian traffic safety. On at least one other occasion, defendants were willing to permit a parade of only 50 people (albeit on a weekend day) without any apparent concern that their safety would be compromised. In addition, a reasonable juror could conclude that the eleven motorcycle officers and fifteen bicycle officers who were originally assigned to escort the protestors could have encircled and protected 75-100 marchers. Whether the on-the-scene modification actually enhanced pedestrian or vehicular traffic safety is contested. Defendants apparently believed that twenty six officers were a force capable of closing intersections, fending off aggressive motorists, and otherwise protecting up to 400 marchers: those capabilities presumably existed even if fewer marchers participated. As for vehicular safety, the officers themselves ended up interfering with

traffic by traveling in the lane that had been intended for the marchers. A reasonable juror could also consider it somewhat inconsistent to send many of the officers home and then argue that traffic safety would have been compromised had plaintiff and its message not been consigned to the sidewalk. There are, therefore, fact issues regarding whether plaintiff's proposed communicative activity endangered the City's interests in vehicular and pedestrian traffic safety and whether the modification imposed at the scene furthered those interests: should these issues be decided against defendants, a reasonable juror could find that defendants' avowed concern for vehicular and pedestrian traffic safety was merely a pretext for content-based regulation.

Given the nature of plaintiff's message, defendants' unexplained delay in addressing conditions that were clearly foreseeable, defendants' changing justifications for the modification once litigation began, the City's pattern of imposing number restrictions on certain types of permits, and the dispute regarding defendants' ability to protect 75-100 marchers, a reasonable juror could conclude that the on-the-scene modification of plaintiff's permit was caused, at least in part, by the message the marchers were attempting to publicize.

Assuming, for purposes of defendants' motion, that the Parade Ordinance was applied in a content-neutral manner, it must still meet the requirements of a valid time, place, and manner restriction. Forsyth County, 505 U.S. at 130. There is evidence from which one could conclude that Lieutenant Sano "rescinded" plaintiff's permit to march in the streets pursuant to a department policy that favors placing marchers on the sidewalk if at all possible. While individual decisions to force marchers onto the sidewalk may be justified by considerations of vehicular and pedestrian traffic safety, doing so simply because the sidewalk can accommodate the group is not narrowly tailored to meet the significant government interests identified in the Parade Ordinance. Defendants' motivation on October 22, 2003, remains a factual issue.[5]

---

[5] The Court finds that marching on the sidewalk along the same parade route as was originally requested is an adequate forum for expressing plaintiff's message.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT              -10-

### III. Procedural Due Process Under the Fourteenth Amendment

"The gravamen of the due process argument is that [plaintiff] had an undeniable liberty and property interest in holding its permitted parade as schedule, and [d]efendants deprived it of that interest without due process -- indeed, without any process at all." Opposition at 18 (Dkt. # 39). Defendants are apparently willing to assume for purposes of this motion that plaintiff's parade permit gave rise to a constitutionally cognizable liberty or property interest. The issue then becomes whether the process by which plaintiff was deprived of that permit (or its rights under the permit) was constitutionally sufficient. Foss v. Nat'l Marine Fisheries, 161 F.3d 584, 588 (9th Cir. 1998). Generally, due process requires that the person who is being deprived of his property be given notice and an opportunity to be heard at a meaningful time and in a meaningful manner. The sufficiency of the notice and opportunity to be heard is evaluated by considering the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

At the very least, there is an issue of fact regarding the constitutional sufficiency of the notice and opportunity to be heard provided to plaintiff in this case. Plaintiff's interest in free speech is of constitutional magnitude and entitled to protection under the First Amendment. Although defendants' interest in regulating competing uses of the City streets justifies the use of a permitting scheme, defendants' practice of allowing, if not encouraging, on-site modifications of a parade permit gave rise to a significant risk of an erroneous (*i.e.*, content-based) deprivation. This risk could be avoided in almost every instance by taking foreseeable facts and conditions

into consideration when the permit is first issued.[6] If, for example, the City has determined that a parade of under 100 persons cannot be safely conducted on the streets after sunset or during rush hour traffic, such conditions should be clearly stated in the permit so the applicant can make use of available administrative/judicial review processes. There is no indication that providing timely and meaningful notice of permit restrictions and allowing applicants to utilize existing review processes would increase the financial or administrative burdens on the City, and yet such processes would greatly reduce the possibility of improper deprivations.

Defendants' motion for summary judgment regarding plaintiff's due process claim is denied. Rather than craft permits that address foreseeable risks and provide applicants with a reasonable opportunity for review, the City grants unrestricted permits and then alters the terms and conditions under which the parade can occur as the participants are gathering to march. With its members and adherents already in the streets, the applicant has no meaningful opportunity to contest the field commander's decision and is generally forced to abandon the march or accede to the new conditions. A reasonable factfinder could conclude that the availability of post-deprivation process in the form of state and federal lawsuits is insufficient under the Mathews v. Eldridge analysis.[7]

---

[6] Where truly exigent or unanticipated circumstances arise that would make it unsafe for the marchers to proceed as originally planned, the availability of post-modification review may be all the process that could reasonably be expected under the Fourteenth Amendment. The facts of this case do not fall within that category, however: the presence of rain, impending darkness, rush hour traffic, and slightly fewer than 100 marchers should not have come as a surprise to the permitting officer and should have been addressed when the permit was originally issued.

[7] In their reply memorandum, defendants argue that plaintiff cannot maintain a substantive due process claim because it relies on the rights granted under the First Amendment and must be analyzed under that explicit textual source. To the extent plaintiff is asserting a substantive due process claim, defendants may not seek dispositive relief for the first time in reply.

### IV. State Constitutional Claims

Plaintiff argues that the Parade Ordinance is an unconstitutional prior restraint under the Washington State Constitution, Article 1, section 5. There are no published cases applying Article 1, section 5 to a parade permitting scheme and a review of relevant state court decisions shows that there are significant questions regarding plaintiff's characterization of the Parade Ordinance as a prior restraint under state law (see State v. Coe, 101 Wn.2d 364, 372-73 (1984)) and whether the ordinance, both on its face and as-applied, is a valid time, place, and manner regulation (see City of Seattle v. Eze, 45 Wn. App. 744, 751-54 (1986)). Plaintiff primarily relies on statements of black letter law and dicta in support of its state constitutional claims.

Plaintiff's argument fails for two reasons. First, the fact that Article 1, section 5 is broadly written and provides greater protection than the First Amendment does not necessarily mean that the specific regulation and conduct at issue here raise constitutional concerns. See Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 115 (1997). Second, plaintiff has not evaluated the six criteria set forth in State v. Gunwall, 106 Wn.2d 54, 58 (1986), to determine whether, in this particular situation, "the Washington State Constitution should be considered as extending broader rights to its citizens than the United States Constitution . . . ." In the absence of a proper Gunwall analysis, the Court will "confine our analysis to the federal constitution." State v. Furman, 122 Wn.2d 440, 448-49 (1993). See also Nelson v. McClatchy Newspapers, Inc., 131 Wn.2d 523, 538 (1997).[8]

---

[8] Defendants moved for summary dismissal of plaintiff's claims under both the due process clause of the Washington State Constitution and Article 1, section 5. Plaintiff chose not to respond to the due process argument. See Response at 19 (Dkt. # 39). The Court will, therefore, assume that the state due process clause offers the same protections as the federal due process clause.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -13-

**V. Claims Based on the Confiscation of a Sign**

In their statement of the facts, defendants acknowledge that police officers escorting the marchers on October 22, 2003, confiscated and destroyed a protester's sign. Defendants seek dismissal of all claims arising out of this event because plaintiff has not provided any evidence regarding the events that precipitated the confiscation, cannot identify the sign-holder or the officers, and has failed to raise a genuine issue of fact regarding any alleged violation of plaintiff's civil rights. Although it is not clear what claim plaintiff is asserting, plaintiff has provided evidence that officers took and destroyed a sign carried by a marcher and argues that this conduct was unlawful. If plaintiff is asserting a First Amendment claim, the very limited testimony provided by the witnesses does not raise an inference of unlawful conduct: there is not enough information to make even an uneducated guess as to what led to the confiscation and the Court will not assume that the officer's conduct was discriminatory and/or an unreasonable time, place, and manner restriction. If plaintiff is asserting a procedural due process claim, plaintiff has not provided any evidence that would support a finding that a post-deprivation review of an officer's response to changing circumstances during a march would be insufficient. To the extent plaintiff has asserted a constitutional claim arising from the loss of the sign, therefore, those claims fail as a matter of law.

**VI. Municipal Liability under 42 U.S.C. § 1983**

Under Section 1983 of the Civil Rights Act, a local government entity cannot be held liable simply because its employee violated plaintiff's constitutional rights. Rather, a municipality such as the City of Seattle may be held liable for constitutional violations only when they occur as a result of the government's official "policy or custom." Monell v. New York City Dept. Soc. Servs., 436 U.S. 658, 694 (1978). This rule ensures that municipalities are liable only for "acts that are, properly speaking, acts 'of the municipality.'" Pembauer v. Cincinnati, 475 U.S. 469, 480 (1986). Discrete decisions by a government official with ultimate authority on a matter, such as Chief Kerlikowske, may serve as "policymaking" by the

government.  Pembauer, 475 U.S. at 481.  The acts of subordinate employees, however, are generally insufficient to create municipal liability under § 1983.  Monell, 436 U.S. at 694.  The constitutionally infirm acts of subordinate employees, such as Lieutenants Paulsen and Sano, may suggest the existence of a municipal policy or custom where there is evidence of "widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."  Nadell v. Las Vegas Metro. Police Dept., 268 F.3d 924, 929 (9th Cir. 2001) (internal quotation marks omitted).

There is evidence in the record from which a reasonable juror could conclude that the City of Seattle had a series of policies and practices with regards to the implementation of the Parade Ordinance that may have caused a deprivation of plaintiff's First Amendment and/or procedural due process rights.  Based on a survey of permits granted in the past few years, plaintiff can argue that the City, through the Chief of Police acting in his official capacity, had a policy of imposing numerical limitations on political or protest marches at a much higher rate than on other types of permits.  The City also has a widespread practice of permitting, if not encouraging, field commanders to make on-the-scene modifications of parade permits in response to non-emergent, foreseeable conditions.  Based on the testimony of defendants' witnesses, the City also had a policy of forcing marchers off the streets and onto the sidewalks whenever the field commander believed the sidewalk could accommodate the number of participants.  The City of Seattle is not entitled to summary judgment under Monell and its progeny.

**VII.  Claims Against Chief of Police Kerlikowske**

In March 2005, plaintiff amended its complaint to allege that Chief Kerlikowske "is sued in his official capacity."  Amended Complaint for Damages, Injunctive and Declaratory Relief at ¶ 4 (Dkt. # 9).  Plaintiff cannot unilaterally alter the nature of its claim in response to a summary judgment motion: its arguments regarding the Chief's individual responsibility for departmental policies are unavailing.

Plaintiff's claims against Chief Kerlikowske are duplicative. "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Plaintiff is suing the City of Seattle directly under § 1983: its official-capacity claims against Chief Kerlikowske are hereby dismissed as redundant.

**VIII. Qualified Immunity**

Defendants argue that Lieutenants Paulsen and Sano are entitled to qualified immunity under § 1983. When a defendant claims qualified immunity from civil damages, plaintiff is required to show that the official has violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Having determined that, if all disputed facts are taken in the light most favorable to plaintiff, defendant Sano, with the advice and input of defendant Paulsen, modified plaintiff's permit based on the content of its message, the Court must determine whether the right allegedly violated was clearly established at the time defendant acted. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).[9] Because no reasonable officer in defendants' positions on October 22, 2003, could have believed that it was lawful to discriminate against marchers based on the content of their speech or to deprive plaintiff of its chosen public forum for reasons not related to vehicular or

---

[9] In an effort to prevent constitutional law from stagnating, the Supreme Court insists that the trial court determine whether defendants' conduct violated a constitutional right before determining whether the constitutional right was clearly established at the time of plaintiff's injury. Without such a two-part analysis, individual rights would be frozen in time as each reviewing court simply determined whether or not defendants' conduct had been found unconstitutional in the past. By first evaluating the constitutional claim on its merits, constitutional rights may develop over time even if the defendant in a particular case is immune from suit because the right found to have been violated was not clearly established at the time he or she acted. If similar conduct should occur in the future, the earlier finding that the conduct implicated a constitutional right would ensure that the later defendant would be held responsible and would not be entitled to qualified immunity.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -16-

pedestrian traffic safety, Paulsen and Sano are not entitled to qualified immunity on plaintiff's remaining constitutional claims.[10]

For all of the foregoing reasons, plaintiff's motion for summary judgment is DENIED and defendants' cross-motion is GRANTED in part and DENIED in part.  The Parade Ordinance is facially valid under the First Amendment to the United States Constitution. Plaintiff has, however, raised a genuine issue of material fact regarding the reason(s) defendants modified plaintiff's permit.  Defendants' motion for summary judgment on plaintiff's procedural due process claim under the Fourteenth Amendment is denied.  Plaintiff's state constitutional claims are dismissed as duplicative of the federal constitutional claims.  Plaintiff's claims arising out of the confiscation of a sign during the October 22, 2003, march fail as a matter of law. Plaintiff has raised genuine issues of fact regarding the City of Seattle's liability under § 1983. Defendant Kerlikowske is entitled to summary judgment because plaintiff's official-capacity claims against him are duplicative of those alleged against the City.  Defendants Paulsen and Sano, however, are not entitled to qualified immunity from civil liability arising out of the on-the-scene modification of plaintiff's permit.

The claims that remain in this litigation arise from the apparently widespread practice of modifying parade permits as participants are gathering in the streets based on conditions that were foreseeable at the time the permit was first issued.  The parties are encouraged to confer among themselves in an attempt to create a departmental policy that would eliminate on-scene modifications as much as possible, thereby avoiding future factual disputes regarding motive and the sufficiency of process.

---

[10] Defendants did not argue that they are immune from any civil liability arising under the due process clause.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                    -17-

1 | Dated this 13th day of March, 2006.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Court

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT           -18-